1834.

SHAW
*v.*
CHESTER.

---

## Shaw, Sheriff, &c. *v.* Chester, *et al.*

---

If there be no affidavit, denying collusion, attached to an interpleader bill, it is ground of demurrer.

Generally, where a party files an interpleader bill, he must offer and be in readiness to bring the money or thing in dispute into court; and must do so if any injunction is to be granted.

Although a sheriff may meet with embarrassment in relation to the ownership of personal property upon which he is required to levy, or in regard to money coming into his hands under process at law, yet he cannot sustain an interpleader bill :—he has sufficient legal protection in such cases. It is possible there may be circumstances to authorize a bill of interpleader by a sheriff—as where he has not been left to pursue the usual legal course with an execution, but, by following the directions of parties in interest, or by their interference, and without there being any fault, omission or neglect on his part, he has been led into embarrassment or difficulty in relation to conflicting claims from which he can relieve himself In no other way.

---

Bill of interpleader, by James Shaw, as sheriff of the city and county of New York, filed against judgment creditors who claimed money made by him under an execution. The circumstances of the case need not be particularly detailed, as the mind of the court was turned to the point whether such a bill in such a case could be filed by a sheriff?

*Nov. 29th.*
1834.

*Interplead-er. Sheriff.*

Mr. *D. B. Talmadge,* for the complainant.

Mr. *W. Bonney,* for the defendants John G. Coster and Anthony Dey.

Mr. *D. Lord,* and Mr. *C. C. Young,* for the defendant William W. Chester.

1834.

SHAW
v.
CHESTER.

January 6th,
1835.

THE VICE CHANCELLOR:—The question to be disposed of is not upon the rights of the respective defendants, who may have an interest or claim upon the money in dispute: but, whether the complainant is right in bringing the matter into this court to be litigated by the defendants?

This bill, professing to be a bill of interpleader, is filed by the complainant as sheriff of the city and county of New York—but it wants some of the usual requisites of such a bill. There is no affidavit negativing collusion; and this is a ground of objection by demurrer to a bill of interpleader: Mitford, 4 ed. 49; Willis Eq. Pl. 442; and see *Statham* v. *Hall*, 1 Turn. and Russ. 30. Again; as a general rule, the party filing a bill of interpleader must offer to bring the money or thing in controversy into court; and if an injunction is asked for, it will only be granted on condition of his complying with such offer. But if an injunction is not wanted, it would only seem to be necessary to make the offer in the bill, and be in readiness and in a situation to comply with it whenever the court shall direct the money or other thing to be deposited: *Earl of Thanet* v. *Paterson*, Barnard. C. R. 250; *Clindennin* v. *O'Keefe*, 1 Hogan's C. R. 118; and *Mohawk & Hudson Rail Road Co.* v. *Clute*, 4 Paige's C. R. 391, 392. Here the bill states that the complainant has it not in his power to bring the money into court, having, by a previous arrangement with the defendant, Anthony Dey, deposited the money in bank in their joint names, so that neither of them can draw it out without the consent of the other. He nevertheless offers in the bill to unite with Mr. Dey in withdrawing the money from the bank and depositing it in court whenever directed; and he has made Mr. Dey a party. This may be sufficient, since the court has both parties before it and can control the disposition which they shall unitedly make of the fund.

But aside from these considerations: the question is, whether the present can be a case for an interpleading bill?

It has been well remarked that such bills ought not to be encouraged; and should not be resorted to except in cases where the complainant can, in no other way, protect himself from an unjust litigation in which he has no interest: *Bedell* v. *Hoffman*, 2 Paige's C. R. 201; and see *Mohawk and Hud-*

*son Rail Road Co.* v. *Clute*, supra. 1 think it would be an evidence of great deficiency in our remedial system of laws, and an evil to be deprecated, if every time a sheriff met with difficulty or embarrassment in relation to the ownership of personal property upon which he is required to levy an execution, or whenever money came into his hands under process from courts of law, and there were conflicting claims, it should be necessary for him to resort to a court of chancery for protection and indemnity, and compel the parties to follow him there in order to litigate and settle their rights. The law is not so deficient. It affords to sheriffs the means of protecting themselves in their proceedings under writs of *fieri facias*, and renders it unnecessary for them to seek the aid of a Court of Equity.

If a sheriff has reason to apprehend that property pointed out to him does not belong to the defendant in the execution or is not liable to be taken and sold, he may enquire, by means of a jury ; and an inquest by them, finding the property not to belong to the defendant, will justify the sheriff in making a return of *nulla bona*, unless the plaintiff gives him a sufficient indemnification, and then he will be bound to proceed upon the execution—an adequate security against loss being all he can require : *Bayley* v. *Bates*, 8 J. R. 143 ; *Van Cleef* v. *Fleet*, 15 Ib. 147 ; *Curtis* v. *Patterson*, 8 Cow. 65. On the other hand, if the jury should find the property to be in the defendant and liable to the execution, and the sheriff proceeds to sell, as he would be bound to do, without a bond or covenant from the plaintiff for his protection, and is afterwards sued or threatened with a suit by a third person claiming the property or its value or proceeds—the inquisition of the sheriff's jury not being conclusive upon the right of property—the court, out of which the execution was issued, will, on application, enlarge the time for making a return, or if the money be in hand and return made, will order it to be retained in court until the right of property can be tried or the sheriff receives a proper indemnification. There are numerous instances where courts of law have thus interfered in England in behalf of sheriffs : *Shaw* v. *Tunbridge*, 2 W. Black. 1064 ; *Wells* v. *Pickman*, 7 T. R. 174 ; *Thurston* v. *Thurston*, 1 Taunt. 120 ; *Mac George* v.

*Birch,* 4 Ib. 585 ; *King* v. *Bridges,* 7 Ib. 294 ; *Venables* v. *Wilks,* 4 Bayly Moore, 339 ; and *Burr* v. *Freethy,* 1 Bing. 71 ; the same thing is to be found in the South Carolina Reports, 2 Bay, 67 ; (*Greenwood* v. *The Executors of Colcock ;*) and it is acknowledged to be the law of our courts in *Bayley* v. *Bates,* before cited.

Hence, it appears that courts of law have the power and are fully competent to protect sheriffs in the execution of final process when conflicting claims arise. Such claims can then be put in a course of trial and adjudication without sending the parties into chancery or reducing the sheriff to the necessity of filing a bill for his own protection. I can find but one reported case in the English chancery, where a bill of interpleader has been filed by a sheriff, in relation to money made by him on a *fieri facias;* and where it was clearly held by Lord Eldon that the bill could not be sustained. The case to which I allude is *Slingsby* v. *Boulton,* 1 Ves. & B. 334. An intimation of Lord Mansfield's (in *Cooper* v. *Chitty,* 1 Burr. 37,) has been cited, and I find it repeated by our Supreme Court in *Bayley* v. *Bates,* that a sheriff may put the parties concerned in interest to litigate their right by filing a bill in chancery to oblige them to interplead in order to ascertain to whom the property belonged. But there is no case in England where this has been attempted, except *Slingsby* v. *Boulton,* and there the course was disapproved.

I am aware of the case of *Nash* v. *Smith,* 6 Conn. R. 421, where, on the equity side of the Superior Court of law of the state of Connecticut, a bill of interpleader was filed by a constable and sustained. But this was in a court where the two jurisdictions of law and equity are blended, and where the two essentials to such a bill, namely, an affidavit denying collusion, and an offer to bring the money into court, (which are required here and in the English chancery,) are dispensed with, and where it would seem to be a matter of indifference on which side of the court and by what form of proceeding the questions as to the right of property and ownership are raised and decided. Here, however, we have separate jurisdictions, and I deem it of some importance that cases which belong to one should be kept distinct and be

confined to the appropriate tribunal; and I cannot consent to take the case of *Nash* v. *Smith*, as a precedent for filing a bill of interpleader under our system of equity jurisdiction and practice.

I do not mean to be understood as saying that in no case can a sheriff be permitted to file such a bill or one partaking of the nature and qualities of an interpleading bill. There may be special cases to warrant his coming into this court: as where he has not been left to pursue the usual legal course with an execution, but, by following directions of parties in interest or by their interference and without any fault, omission or neglect on his part he has been led into embarassment or difficulty in relation to conflicting claims from which he can relieve himself in no other way. In the present case there are no such special circumstances. With respect to the *fi. fa.* issued by the defendants, Messrs Chester, the complainant had only to pursue the straight forward legal course of taking an inquest, when the adverse claim was set up by Dey as receiver or by the defendant John G. Coster as mortgagee, and have demanded an indemnity bond if the result had shown he was entitled to it. So far from any interference or consent on the part of the Mess. Chester or their attorney, by which the sheriff or his deputy could be diverted from this course, the testimony shows he was repeatedly cautioned against giving up the possession or controul of the property levied upon or its proceeds when sold. There was no objection to a sale through the medium of the auctioneer appointed by the other parties in interest to sell the whole of the property, which was more than sufficient to satisfy the execution, provided so much as would do so could be considered as sold by the sheriff and the proceeds to that amount should come into his hands. This was the clear import of a written notice from the attorney on the twenty-seventh day of February; and in his subsequent conversations with the complainant and his deputy and previous to the sale they were distinctly informed that the plaintiff would not consent that Mr. Dey should take the property or its proceeds from the possession of the sheriff under the execution, but that the sheriff

1334.

SHAW
v,
CHESTER.

must hold on to the possession and control the proceeds of the sale to that amount; at the same time suggesting that the matter might be tried by a sheriff's jury for his protection. Notwithstanding all this, the sheriff suffered the auctioneer to proceed and sell the whole of the property, without having the exclusive control and possession of any portion of the proceeds—after the sale submitting to the necessity (as the best mode of getting the money out of the hands of the auctioneer) of uniting with Mr. Dey in the receipt of the money and of placing it in bank subject to their joint order. If this course had been concurred in o r subsequently adopted by the Chesters, it might, perhaps, have been considered a fitting case for equitable interposition; but not being parties to this arrangement, they chose to put themselves upon their legal rights and proceeded to rule the sheriff to return their execution. He stood out to an attachment; and upon a hearing of the whole matter, the court of law ordered him to return the writ and admit in his return that the money was in his hands subject to the adverse claims. And this he has done. The plaintiffs in the execution, the Messrs. Chester, thereupon required him to pay over the money to them, offering him their bond of indemnity already executed, but to the sufficiency of which no objection was made and no reply given. The sheriff, shortly afterwards, filed the present bill; and although the defendants have answered, the Chesters claim the benefit of the same objections which they could have taken by demurrer—and, as respects them, it appears to me there is no propriety in this bill. In consequence of the return which was made to the writ of *fi. fa.*, the court of law was competent to protect the sheriff by ascertaining the claims upon the money or by requiring he should be indemnified before they would compel him to pay it over. A bond to refund was indeed executed and delivered to him voluntarily, with an offer to make it satisfactory, if it were not so then. He should, therefore, have submitted to the judgment and direction of the court of law or have satisfied himself as to the sufficiency of the bond to save himself harmless and should have paid over the money accor-

1834.

SHAW
v.
CHESTER

dingly. It is no excuse that the identical money was not at his sole command. This was not the fault of the Messrs. Chester, nor any concern of theirs. Besides, the Superior Court had decided that as to them the money was to be considered in the Sheriff's hands, otherwise they would not have ordered him to make a return to this effect. The whole difficulty may be attributed to the circumstance that the sheriff had omitted to obtain the exclusive possession of the money as he ought to have done and this can give him no right to come into this court for protection or relief against the defendants, the Chesters.

In *Burnett* v. *Anderson*, 1 Mer. 405, it was held that a complainant, who had parted with the property, could not sustain an interpleading bill against different claimants upon an undertaking to pay over the value to the party entitled, nor is the present a case of equitable jurisdiction for a bill in the nature of a bill of interpleader within the principle adverted to by the Chancellor in *The Mohawk & Hudson Rail Road Co.* v. *Clute*, supra, and the case there cited of *Shotbolt* v. *Briscow*, Gilbert's Eq. R. 18.

If the parties should now be turned over to their respective legal rights, it appears to me that, upon the law of the case, the sheriff cannot be exposed to any injustice or hardship; and if, in the result as between the sheriff and Mr. Dey and those he may represent, the former shall appear to be entitled to the money now deposited in their joint names, this court can, by a proper bill to be filed, if necessary, decree the money and its accumulations to belong to the sheriff and direct that it be relinquished to him.

The present bill is not calculated for such relief as between these parties; and I consider it cannot be sustained for any purpose. It must be dismissed as to all the defendants and with costs to the Chesters; but as there is no good reason why the defendants, Mess. Dey and Coster, should not have permitted the money to pass into the Sheriff's hands in the first instance, subject to their claims, and as the peculiar situation of the fund ,has probably induced the sheriff, under the advice of counsel and in good faith, to suppose the present bill proper, I shall, under the circum-

stances, excuse the sheriff from the payment of their costs of this suit.