# CARROLL,

## DECEMBER TERM, A. D. 1860.

### PARKER *v.* BARKER.

A bill of interpleader does not lie by a sheriff against several creditors, where a controversy arises as to the application of the money in his hands, derived from a sale of a debtor's property on execution. His remedy is by an application to the summary jurisdiction of the court from which the process issues.

In a bill of interpleader, the plaintiff must offer to bring into court the money in dispute.

IN EQUITY. The bill sets forth that the complainant, Charles H. Parker, is a deputy sheriff, and has in his hands $1,840.21, received on sale of goods of E. D. Barker, attached and sold on writs against him by agreement of parties, and that this money, the defendants claim, should be paid to them in sums hereafter stated;

That W. Barker was plaintiff in the first action and attachment, and March 1, 1860, obtained judgment against E. D. Barker for $3,148.79 debt, and $159.63 costs, took out execution, and on the 22d delivered it to the plaintiff. March 30th he demanded and received the execution, carried it away, and kept it till April 3d, and then re-delivered it to the plaintiff;

That while the said execution was in the plaintiff's hands, from March 22d to March 30th, he had no opportunity and was unable to levy on said $1,840.21, or apply the same on said execution, by reason of the doings of said W. Barker; that he supposed said Barker's lien was lost, on the 3d of April when the execution again came to

his hands, by the expiration of thirty days after judgment, which expired March 31 ;

That when W. Barker delivered his execution to him again, April 3d, he requested the plaintiff to levy it on the $1,840.21, and pay the money to him ; that the plaintiff declined, because of rights he supposed the other defendants had acquired to it during the time from the 22d to the 30th of March, as follows :

Conant and others recovered judgment against E. D. Barker, March 1, 1860, for $604.63 debt, and $7.53 costs. Execution issued March 5th, and was delivered to the plaintiff March 15th, with directions to levy on any property of E. D. Barker liable to be levied on; and after W. Barker's execution was returned to him, March 30th, Conant and others directed their execution to be levied on said $1,840.21, sufficient to satisfy it and fees.

On the 19th of March, 1857, the plaintiff took from E. D. Barker a receipt for goods attached on writs of J. P. Adams; the plaintiff in those suits demanded this receipt of the plaintiff, sued it, and delivered his writ to D. Wentworth, a deputy sheriff, who, on the 2d of April, requested the plaintiff to expose property of E. D. Barker, and attached $200 of said $1,840.21, and claims to hold it under that attachment.

A. D. Purrington, April 2, 1860, sued out an attachment against E. D. Barker, delivered it to the plaintiff, and directed him to attach $400, part of said $1,840.21, which was done, and he claims to hold said $400 by virtue of that attachment.

Peters and others, October 16, 1857, sued out a writ of attachment against E. D. Barker, and delivered it to the plaintiff for service, and he attached said E. D. Barker's goods to the value of $1,200, subject to former attachments. Peters and others obtained judgment, at April term, 1860, for about $570, debt and cost, and claim enough of said money to satisfy their judgment.

The bill then alleges that the plaintiff has no other claim, except as before stated, and is ready to pay to those lawfully entitled; that said W. Barker claims his lien is not lost; that the plaintiff can not safely pay till the rights to the fund are determined; and the plaintiff prays answers; that defendants may interplead; for leave to pay the money into the bank for the benefit of those entitled under order of court; for injunction against suits, and for general relief and process. An affidavit is added that there is no collusion.

W. Barker demurs; Peters and others do not answer; Purrington, Conant and others, and D. Wentworth make answers, admitting the main facts charged, and allege no others deemed material to the questions considered by the court. The answers all assert that W. Barker did not levy on said $1,840.21 within thirty days after his judgment, by which his lien was lost, while they have, by proper proceedings, preserved their lien.

*Perley*, with him *Christie* and *Moody*, for W. Barker.

The plaintiff holds the money in question as a deputy of the sheriff, and is bound to apply it on his process according to law, and he can not delay this duty till he obtains instructions of the court by a bill of interpleader. The policy of the law will not allow an officer to neglect the command of his writ, and retain money from the party legally, on the ground that he is in doubt as to his duty, especially where the doubt is of the law, and not about the facts.

An officer who has funds of a debtor, claimed by different creditors, can not maintain a bill of interpleader. He is said to be bound to execute his process according to law, and his neglect to proceed is a wrong to one or the other defendants in the bill. *Slingsby* v. *Boulton,* 1 V. & B. 334; 2 Story's Eq. 125, sec. 821. He has no necessity for this remedy, as in all cases of doubt, he may insist on in-

demnity, and this, it is said in *Richards* v. *Gilmore*, 11 N. H. 493, "gives him every necessary shield, in placing it in his power to devolve the entire responsibility of the service of process on the creditor." *Davis* v. *Richmond*, 14 Mass. 473; *Stark* v. *Sherwin*, 1 Pick. 521. In this case, if there was reasonable doubt, which we deny, the plaintiff might have called on Barker to indemnify him for applying the money on his execution, and if indemnity was not furnished, he would be excused. It would be a dangerous innovation, and unnecessary for the protection of the officer, if he could arrest legal process, and tie up money collected till the termination of a bill of interpleader, instead of relying, as heretofore, on an indemnity.

The authorities against a bill of interpleader, in a case like this, are numerous and decisive. *Slingsby* v. *Boulton*, V. & B. 334; *Shaw* v. *Coster*, 8 Paige 339; *Shaw* v. *Chester*, 2 Edw. Ch. 405; *Quinn* v. *Green*, 1 Ired. Ch. 299; *Quinn* v. *Patten*, 2 Ired. Ch. 48; 3 Dan. Ch. Pr. 1757. There are analogous cases, where bills of interpleader are not allowed, because of the danger of vexatious and oppressive delay. *Yarborough* v. *Thompson*, 3 S. & M. 292; *Freeland* v. *Wills*, 18 Mis. 380; *Cahoun* v. *Levy*, 4 Cal. 243; 3 Dan. Ch. Pr. 1757.

By the statement of the bill the fund, as to the plaintiff, belongs to W. Barker, and he may demur for that cause. When the execution was in the plaintiff's hands, on the 22d of March, the money ought to have been applied on Barker's execution forthwith. The plaintiff held the money, made on mesne process, to be applied under the statute, in the order of the attachments. Barker's was the first; and the only duty of the plaintiff, on receiving his execution, was to pay the money to him, and make return of the fact. The delivery of the execution was a sufficient order to apply the money. No delay was necessary for any levy or seizure of the money. Neither, in the common sense of those terms, was necessary or possible. The

money was in the officer's hands, as it would be if made by a like sale on execution. No direction of the creditor was necessary beyond the delivery of the execution. *Davis* v. *Richmond*, 14 Mass. 473; *Stark* v. *Sherwin*, 1 Pick. 521.

Taking away the execution after it had remained in the plaintiff's hands for service, from the 22d to the 30th of March, affords no excuse for neglect of duty, especially as it was returned to him on the 3d of April, in time to make his return. The bill states nothing to justify or excuse his breach of duty. The insinuation that he was prevented from serving the execution, by the acts and doings of Barker, without saying what he did, is idle.

Unless Barker's claim to the money is sustained on the facts stated in the bill, the court can make no decree that will dispose of the fund and discharge the plaintiff. The demands of Wentworth and Purrington are inchoate and contingent, depending on the facts, whether they shall recover judgment in those suits. The claim of Peters and others is not in the hands of the plaintiff, and, perhaps, never will be. The court can not now make any decree, if the facts stated were confessed, to assign the money to the defendant who may be in the end entitled. The fund is in the hands of the sheriff, to be held till, so far as these contingent claims are concerned, they shall be determined by law. The creditors have the right it shall remain there, and the court can not take the property, and keep and apply it, in place of the officer charged with that duty.

Officers attaching goods assume legal responsibilities, from which they can not be discharged by transferring their duty to any agents of a court. No decree can discharge the sheriff from the duty of keeping this fund, to answer the judgments of attaching creditors in the suits against E. D. Barker; and this bill, therefore, can not be maintained, for such a bill must show that the court can make a decree that will discharge the plaintiff, and assign

the fund to the defendants, or one of them. *Lincoln* v. *Railroad*, 24 Vt. 639.

The bill must offer to bring the money into court, and be accompanied by an affidavit, denying collusion, or it is demurrable. *McGarrah* v. *Prather*, 1 Blackf. 229 ; *Shaw* v. *Coster*, 8 Paige 339 ; 2 Story's Eq. 116, sec. 809.

E. D. Barker has a contingent interest, at least, as to Wentworth and Purrington's claims, and is a necessary party.

The $200 delivered to Wentworth is not in the plaintiff's possession, and not a subject for a bill of interpleader. 3 Dan. Ch. Pr. 1756 ; *Burnet* v. *Anderson*, 1 Mer. 435.

*Batchelder*, for the plaintiff.

By the demurrer the facts stated in the bill are admitted, in manner and form as they are stated. 1 Dan. Ch. Pr. 599 ; Story's Eq. Pl., sec. 542, note. As the demurrer is not for informality, it must be dismissed, if enough is stated to maintain the bill, though defectively stated. *Ib.* The bill answers all the requirements of the authorities as to necessary contents of a bill of interpleader. 2 Story's Eq., sec. 800 *et seq. ;* Story's Eq. Pl., sec. 291 *et seq. ;* 3 Dan. Ch. Pr. 1753 ; *Farley* v. *Blood*, 30 N. H. 354. It appears by the bill that the plaintiff has in his possession funds which he obtained and holds in the due performance of his duty as a deputy sheriff; that W. Barker claims the whole to be applied on his. execution ; while each of the other defendants require the plaintiff to apply certain parts of it on his process. The plaintiff is bound to apply this money according to law. Neither the bill, nor any thing in it, shows he had not been ready to do so, when he should be able ; or that he is disposed to disobey the commands of his writ, or to detain the money unnecessarily. He only seeks to know how the law requires him to apply it. The bill states that W. Barker, who once

had the first legal claim, prevented the plaintiff from applying and paying over the money according to law, till he had forfeited his claim, and let in the other defendants. When he returned his execution to the plaintiff, April 3, and demanded the money should be paid to him on it, he raised a question, not wholly as to his duty as an officer, but as to the rights of third persons, which the court will not require him to decide. The court will not, because he is sheriff, deny him the right of obtaining the direction of the court, which the equity rule gives to others holding property in the same manner.

Where it appears, by the answers, that each of the defendants claims the fund, the plaintiff is entitled to a decree to interplead. *Farley* v. *Blood*, 30 N. H. 264; *Atkinson* v. *Marks*, 1 Cow. 591; *Belcher* v. *Crawford*, Sandf. Ch. 380. The demurrer and answers show such claims . distinctly. Barker can not complain of the proceeding, for he created the necessity for it, and the others do not complain. If the plaintiff must decide according to the statute, he must hold W. Barker had forfeited his right by taking and keeping his execution beyond thirty days, and the others were entitled. Barker at no time offered the plaintiff any indemnity, on paying the money to him.

The right of an officer to maintain a bill of interpleader, where he has funds of a debtor claimed by different creditors, is denied. We do not so understand the law. This proceeding for adjusting conflicting claims to property in the hands of a third person, innocent of wrong, and standing as a stakeholder, is designed to prevent a depositary from being harrassed by suits at law in which he has no interest. 2 Story's Eq., sec. 802; Story's Eq. Pl., secs. 18 and 291; Dan. Ch. Pr. 1752. A sheriff is often in such a position. The plaintiff is so here — a mere depositary, without any interest in the question to whom the fund belongs. Privity between the claimants is requisite to a bill of interpleader. Their claims must

be derived from a common source, and be of the same nature and character. 2 Story's Eq., sec. 806, and note; Story's Eq. Pl., sec. 293; 3 Dan. Ch. Pr. 1754. The case is strictly within that rule. The defendants claim a lien on the same money, derived from attachments on mesne process of the same goods of the same debtor. Each must avail himself of his lien as prescribed by law, or lose it, and a subsequent one then prevails. The others claim that W. Barker, failing to avail himself of his lien according to law, lost it, and theirs, being next in order, became available. Barker denies this, and so a question of law arises; and this makes such a case as is described by the books, as is suited to a bill of interpleader. 2 Story's Eq., sec. 866, and notes; Story's Eq. Pl., sec. 291, and note; 3 Dan. Ch. Pr. 1754, and note 8.

The authority cited by the defendants, 2 Story's Eq., sec. 821, does not apply. There the officer would summon parties to interplead who have no privity, whose claims are of a different nature and origin, and where the officer may be a trespasser as to some of the parties in obtaining possession. The same view is taken in 3 Dan. Ch. Pr. 1759.

Nash v. Smith, 6 Conn. 421, is directly in point, and in principle very like this, and it was held that suits against the officer, for giving undue preference between attaching creditors, was no impediment to the bill. Here the officer seeks to avoid such suits by obtaining the direction of the court.

That an officer may call on a creditor for indemnity in cases of risk is true; but that he is obliged, in a case like this, to assume such risk and trouble, we find no authority. A party may resort to a bill of interpleader, and ask the court to direct him to which claimant to pay or deliver the money or property in his hands, though he might, by great diligence and caution, make himself secure. He may make himself secure by a single suit, instead of as

many suits as there are claimants, when one payment ought to discharge him. The object of the proceeding is to give protection against suits at law in which the plaintiff has no interest. *Angel* v. *Haddam,* 15 Ves. 244; S. C., 2 Ves., Jr., 1838; *Richards* v. *Salter,* 6 Johns. Ch. 445; *Farley* v. *Blood,* 30 N. H. 354.

A person entitled to a bill of interpleader is not obliged to rely on any promise or covenant of indemnity. *Yates* v. *Tisdale,* 3 Edw. Ch. 71.

Barker did not request the plaintiff to apply the money on his execution, while his lien remained. It was his duty to go to the plaintiff for it, and not of the plaintiff to carry it to him. *Davis* v. *Richmond,* 14 Mass. 483; *Moody* v. *Mahurin,* 6 N. H. 296.

If the plaintiff was bound to apply this money on Barker's execution during the seven days he had it, that does not affect the relative position of Barker and the other defendants. It can not give a title to this money against the others, nor destroy their lien upon it. It can not revive Barker's lien, nor preclude the others' lien from intervening, nor affect the plaintiff's right to maintain his bill. If the plaintiff failed in his duty to Barker, he had his remedy by action at law, which this suit can not take away. If exposed to a suit by Barker, this will not preclude his protecting himself from suits by the other defendants.

The assertion that this money, as to the plaintiff, belonged to Barker is erroneous. He had no property in the money; he had only an interest under his attachment, to be perfected in a special manner prescribed by law. The general property is in the debtor. The money is, in legal intendment, in the custody of the plaintiff, to be applied according to law. Until so applied, the creditor has no property—only a lien. *Ladd* v. *North,* 2 Mass. 514; *Blake* v. *Shaw,* 7 Mass. 505; *Perley* v. *Foster,* 9 Mass. 112; *Hackett* v. *Pickering,* 5 N. H. 24; *Goddard* v.

*Perkins,* 9 N. H. 488; *Kittredge* v. *Warren,* 14 N. H. 526; *Gay* v. *Johnson,* 32 N. H. 167. When he took his execution within thirty days, his lien was abandoned; when thirty days expired, it was lost, *Hackett* v. *Pickering,* 5 N. H. 24; *Haynes* v. *Thorn,* 28 N. H. 386, and the other processes took priority.

The allegation that, by reason of the acts and doings of Barker, the plaintiff had no opportunity and was unable to apply this money on Barker's execution, is not idle; it is clear and unequivocal, and susceptible of proof, and material. The plaintiff is not required to set out particulars. On demurrer the statements of the bill can not be disputed. 1 Dan. Ch. Pr. 600.

The contingencies attaching to the claims of Wentworth and Purrington are not cause of demurrer. The bill may be retained till they are determined. They do not affect the rights of other defendants. The answer of Peters shows his execution in the plaintiff's hands.

The plaintiff asks leave to deposit the money, under the order of court. According to the precedents this is a sufficient offer to bring the money into court. The omission is not ground of demurrer. *Nash* v. *Smith,* 6 Conn. 421. E. D. Barker has no interest. If he had, the omission of him as party is no ground of demurrer. *Gipson* v. *Goldthwait,* 7 Ala. 281.

BELL, C. J.* It is objected to this bill, that a bill of interpleader does not lie for a sheriff to compel parties who claim the property which he has taken on execution, to litigate their rights as between themselves.

A single English case is cited in support of this position — *Slingsby* v. *Boulton,* 1 V. & B. 334 — thus stated : " Where goods, seized and sold by a sheriff, were claimed by trustees under a settlement, who brought an action of trover therefor against him, Lord *Eldon* refused an injunc-

* Doe, J., did not sit.

tion, upon an interpleader bill filed against the trustees, and the creditor in the execution. He said the sheriff acted at his peril in selling the goods, and was concluded from stating a case of interpleader, in which the complainant always admitted a title in all the defendants as against himself. That a person could not file a bill of interpleader, who was obliged to put himself upon this, that as to some of the defendants he was a wrongdoer."

This is the only case I recollect seeing in the English books, of such a bill of interpleader; but the same doctrine is laid down in 2 Story's Eq. 124, sec. 821, and was held in *Shaw* v. *Chester,* 2 Edw. Ch. 405; and *Shaw* v. *Coster,* 1 Paige 344; in *Quinn* v. *Green,* 1 Ired. Eq. 229; and *Quinn* v. *Paton,* 2 Ired. Eq. 48 (2 U. S. Eq. Dig. 115; 32, 33); and is stated in the American editor's chapter on Interpleader, 3 Dan. Ch. Pr. 1757, and in 1 Smith's Ch. Pr. 472. The case of *Storrs* v. *Payne,* 4 Hen. & Mun. 506, is cited in the Digest as holding a contrary doctrine (2 U. S. Eq. Dig. 115; 31); but *Walworth,* Ch., is of opinion that the case agrees with the other decisions. 8 Paige 346.

These books all relate to seizures of property on execution, where the title is in dispute, and there are several claimants at the time of the seizure. There is, however, another class of cases of conflicting claims upon the property seized by an officer, where no doubt is suggested as to the title of the property, or the propriety of the seizure at the time it was made, but conflicting claims have afterward grown up, either to the property or its proceeds. To these cases the objection made in *Slingsby* v. *Boulton* has no application. Of this class is the case of *Nash* v. *Smith,* 6 Conn. 421. There neither of the defendants to the bill of interpleader claimed title to the property adversely to Silliman, the execution debtor. The officer, therefore, had no interest adverse to the claim of either party, as each had put into his hands process to be levied on the same property, the one claiming it as the

individual property of Silliman, and the other as the partnership property of Silliman and Cook. There was, therefore, a privity between the officer and each of the defendants, and the only question was, whether the proceeds of the sale, which had been rightfully made, should be applied to the payment of the individual debt, or of the partnership debt. The bill was sustained, and *Walworth*, Ch., says (8 Paige 346) it was clearly a proper case for a bill of interpleader, if the complainant, instead of paying the money to one of the parties, had retained it, and offered to bring it into court.

This solitary case and single dictum are all I have been able to find in the books, which give any countenance to a bill of interpleader by a sheriff, in cases of this kind. It seems the decision can not be supported, not only for the reason alluded to by Chancellor *Walworth*, that the money had been paid over by the sheriff to one of the parties, but for the reason that the complainant had a perfect remedy at law. We think it clear that the courts of law are fully competent to protect sheriffs in the execution of official process, in the case of conflicting claims. *Shaw* v. *Chester*, 2 Edw. Ch. 405. The fact that, with the exception of the doubtful cases in Connecticut, no case of an interpleader bill has been maintained by a sheriff, in a case of this kind, though the occasion for them must have been always extremely frequent, is conclusive that redress and relief must have been sought and found elsewhere than in the courts of equity. Beside, we think no community would have submitted to so tedious and expensive a method of settling the question, how money, coming into an officer's hands by levy of execution, should be disposed of.

The law on this subject is stated in Tidd's New Practice 573. "Previously," he says, "to the new interpleader act (1 W. 4), if the property of goods had been

disputed, which frequently happened on a commission of bankrupt, &c., the courts, on suggestion of a reasonable doubt, would have protected the sheriff, by enlarging the time for making the return, till the right was tried between the contending parties, or one of them had given him a sufficient indemnity. The rule for this purpose was a rule to show cause. And the Court of King's Bench, upon the application of the sheriff, enlarged the time for making the return to a writ of *fi. fa.*, upon suggestion of a reasonable doubt whether the goods seized under the writ were not bound by an extent, afterward issued at the suit of the crown for malt duties, for the purpose of inducing the plaintiff to go into the Court of Exchequer, and there contest the question of right with the crown in a more eligible manner than in that court. So where it appeared by affidavit that writs of extent and *fi. fa.* had been issued on the same day, the Court of King's Bench, for protecting the sheriff, refused to allow a *venditioni exponas* to be issued, on the return of the *fi. fa.*, to compel him to sell the goods under it. So where a bankrupt brought one action and his assignees another, against the sheriff, the court allowed the latter to pay the money into court, and stayed the proceedings until the trial of an issue between the bankrupt and his assignees. *Jones* v. *Perry*, 21 Geo. III, K. B. And, in general, where an action was brought against the sheriff by the assignees of a bankrupt, for taking goods in execution after a bankruptcy, the courts would assist the sheriff, by staying the proceedings, until he was indemnified on proper and equitable terms." The authorities cited by the learned author are very numerous, and fully sustain his statement of the law. Those cited in support of the last position are *McGeorge* v. *Birch*, 7 Taunt. 585; *King* v. *Bridges*, 7 Taunt. 294; 1 Moore 43; *Probinia* v. *Roberts*, 1 Chit. 577, 643, a; Anon., 2 Chit. 204; *Venables* v. *Wilkes*, 4 Moore 339; *Bernasconi* v. *Fairbrother*, 7 B. & C. 379; *Beavan* v. *Daw-*

*son,* 6 Bing. 566 ; 4 Mo. & P. 387 ; *Ibberson* v. *Dicas,* 1 Leg. Obs. 109, 398 ; *Solari* v. *Randall,* 1 Leg. Obs. 159 ; Anon., 2 Leg. Obs. 334; many of which are collected in 3 Harr. Dig. 6133. And see Watson on Sheriffs, 184.

By the precept of the common law writ of *fi. fa.,* the sheriff is commanded, "and have you that money before our justices at W., on, &c., to render to the said A., for the debt and damages aforesaid." Imp. Mod. Pr. 496 ; 2 Lillie's Ent. 581, &c. There the allowance of time to return the writ protects the sheriff against a suit. *Moreland* v. *Leigh,* 1 Stark. 188.

Here the precept of the execution is, "You cause to be levied and paid to the said creditor the aforesaid sums," &c. (Rev. Stat. 496, sec. 10), and the sheriff is liable to a penalty for refusal or neglect to pay over any money received, without reference to the return of the execution. Rev. Stat. 454, sec. 11. An order here extending the return of the execution would not protect the sheriff; but the cases cited show that the powers of the courts of law are not restricted to any specific mode of affording relief, but they may stay any proceedings in court, where it is necessary or proper for the sheriff's protection.

With such powers vested in the courts of law, it can not be necessary to seek relief by proceedings in equity. And the summary character of the proceedings at law renders them altogether more suitable to afford the required redress. Such proceedings must be prompt. They must, unless special circumstances are shown, be commenced at the next term. *Bernasconi* v. *Fairbrother,* 7 B. & C. 379 ; *Rex* v. *Sheriff of Devon,* 1 Chit. 643 ; *Beale* v. *Overton,* 2 M. & W. 534 ; *Cook* v. *Allen,* 1 C. & M. 542. The proceeding is by a rule to show cause, and affidavits in support of it. *Ledbury* v. *Smith,* 1 Chit. 294.

Though the court may order the proceedings to be stayed until an issue has been tried between the contending parties, the proceedings are under the control of the

court, and are summary in their character. *Jones* v. *Perry*, Tidd's N. P. 574; *Ledbury* v. *Smith*, 1 Chit. 294 ; *Thurston* v. *Thurston*, 1 Taunt. 120; *Burr* v. *Frethy*, 1 Bing. 71; 7 Moore 368 ; *Etchells* v. *Lovett*, 9 Price 54. Yet this is neither the mode nor the measure of the relief ordinarily afforded in such cases by the courts of law. The law recognizes the principle that the sheriff has a right to require an indemnity, in all cases of risk arising from an attachment or levy on property, which may expose him to danger or expense on account of conflicting titles to the property, and regards this as as the proper security to the officer against the hazards incident to his official duties. *Richards* v. *Gilmore*, 11 N. H. 497; *Perkins* v. *Pitman*, 34 N. H. 261; *Benson* v. *Ela*, 35 N. H. 402.

In a large majority of the reported cases, the stay of proceedings, or the time allowed for the return of the process, is made to be of force until the sheriff is indemnified. Such are the cases of *Keightley* v. *Birch*, 3 Camp. 520 ; *Saunders* v. *Bridges*, 3 B. & A. 95 ; *Venables* v. *Wilkes*, 4 J. B. Moore 339 ; *Thurston* v. *Thurston*, 1 Taunt. 120 ; *Ledbury* v. *Smith*, 1 Chit. 294 ; *Rex* v. *Sheriff of Devon*, 1 Chit. 643; *Shaw* v. *Tunbridge*, 2 Bl. 164; *Probinia* v. *Roberts*, 1 Chit. 577 ; *McGeorge* v. *Birch*, 4 Taunt. 585 ; *King* v. *Bridges*, 7 Taunt. 294 ; 1 Moore 243 ; *Beavan* v. *Dawson*, 6 Bing. 566 ; *Holmes* v. *Mentze*, 4 Ad. & El. 127.

And where in such case an indemnity is ordered, its sufficiency will be referred to some proper officer of the court. *Hartley* v. *Stead*, 8 Moore 466 ; *Burr* v. *Frethy*, 1 Bing. 71; *King* v. *Bridges*, 7 Taunt. 294; 1 Moore 43.

This summary proceeding at common law affords to the sheriff all the redress the law entitles him to, cheaply and at once, and it guards against abuses which must arise from allowing the money levied upon execution to be intercepted on its way to the creditor.

We are, therefore, of opinion that the plaintiff has mistaken his remedy, and his bill can not be maintained.

The courts of common law in England have no power to issue writs of injunction. In this state, the supreme court have power to "issue writs of injunction whenever the same shall be necessary to prevent injustice." And this authority is by no means confined by the statute or by the practice to cases in chancery. They are used in aid of statutory proceedings, as libels for divorce, petitions for new trials, and the like; and we entertain no doubt of the power or duty of the court to avail themselves of this summary writ to protect officers against actions, commenced or threatened, in cases where it is shown to the court that reasonable doubt exists as to the duty of the officer, or the title to the property is in question and the parties refuse to give suitable indemnity, upon a summary application.

If a bill of interpleader could be maintained in a case like this, it seems to be settled that if the plaintiff states a case in his bill which shows that one of the defendants is entitled to the debt or duty, both defendants may demur. The one upon the ground that the plaintiff has a perfect defense at law against his claim, and the other on the ground that the plaintiff has neither a legal nor an equitable defense to his claim, and has therefore no right to call upon him to interplead with a third person, who claims without right. *Shaw* v. *Coster*, 8 Paige 348. He must show that he is ignorant of the rights of the parties who are called on by him to interplead, or at least that there is some doubt in point of fact, to which claimant the debt or duty belongs, so that he can not safely pay or render it to one, without risk of being made liable for the same debt or duty to the other. *Ibid. ;* 2 Story's Eq. 124, sec. 821.

Here it is insisted, that by the facts stated in the bill, the money belongs to W. Barker, and he may demur for that cause. At the time when Barker's execution was delivered to the complainant, he had in his hands the pro-

ceeds of goods attached and sold on several writs, of which Barker's had priority. On receipt of the execution it was his duty to apply the money at once on his execution without special directions. It was the officer's duty to apply the money, and to pay it over to the creditor on demand. *Stark* v. *Sherwin*, 1 Pick. 521. He is bound to suppose that the creditor intends to get satisfaction of his debt out of the property he has caused to be attached, unless the contrary is shown to him. *Watson on Sheriffs*, 184; *Richards* v. *Gilmore*, 11 N. H. 497; *Hill* v. *Pratt*, 29 Vt. 119.

The execution remained in the hands of the officer some seven or eight days, which was ample time to make the application, if time could be required; but none was necessary, and William Barker had the right instantly, on delivery of the execution to the officer, to demand of him the money. Being in the officer's hands, it was at once held by him in satisfaction of the execution. No ceremony was required. The right to the money vested in the creditor at once.

The bill alleges that W. Barker delivered his execution to the plaintiff on the 22d of March, and on the 30th of March he demanded and received the execution from him and took it away, and kept it in his possession till the 3d of April, when he returned it. All the doubt cast upon W. Barker's claim rests on this fact thus alleged. Notwithstanding what had occurred, as the actual payment of the money had not been made to Barker, it was competent for him, if he chose, to withdraw his execution and abandon his levy, and with it all right to the money. Assuming that to be so, it is not this case. Barker demanded and received his execution, with what view or purpose it is not said; nor is any thing said, from which it may be inferred. If done for the purpose and with the design of withdrawing it and abandoning his levy, that purpose was most essential, and rendered the act completely fatal to

any future claim to the money, as against the after attaching creditors. If that was not the purpose, the act of demanding and receiving the execution from the officer was merely immaterial. If the plaintiff relied on the facts, as an abandonment of his levy, and consequently of all claim, he was bound to state that purpose explicitly and unequivocally. If he had done so, he would have shown W. Barker to have no claim whatever, and consequently not bound to interplead with any one. As it is stated, no intention to abandon the levy can be presumed, and the claim of W. Barker is left free of any doubt whatever.

The bill should have alleged that the other defendants claim and assert, that by demanding, and receiving, and keeping his execution till after the expiration of the thirty days, for which the money was held under the attachment, said W. Barker voluntarily withdrew and abandoned his levy on said money, and all claim to the same; and that Barker denied any such abandonment. The bill would then have presented a case of apparent doubt; but the mere demand and receipt and keeping of the execution for a few days, without more, was a matter of no consequence whatever, and in no way affected the rights of any body.

If the facts stated presented a case for interpleading, we should not feel pressed with the difficulty that the claims of some of the defendants are contingent. The bill would not be dismissed for that cause, but a decision might be deferred till the contingency was determined.

Neither do we find any difficulty in any supposed want of power of the court to take the fund out of the hand of the officer, and to control its disposition or distribution; notwithstanding the principle that the sheriff and his deputies, when they attach goods, assume certain legal responsibilities to which the parties have a right to hold them. Whenever a bill of interpleader may be rightfully filed,

the party must offer to bring the money into court to abide its decision, and when it is so brought into court, all parties must abide the decision of the court in respect to it.

There may probably be cases, where a sheriff may be entitled to maintain a bill of interpleader, as for instance in some cases where the law does not afford him redress by a summary application to the court, from which the execution issued. In any such case, we think there can be no question of the power of the court to compel the parties upon a bill of interpleader to settle the question by a suit, or issue, or otherwise, between themselves, and to abide the decision as to the disposal of the property.

The rules, which require the offer to bring the money into court, seem to us founded in wisdom. It would furnish a strong motive, in many cases, to delay the payment of money by filing bills of interpleader, if a party could keep and retain the money in his own hands during the lawsuit. And we think there is no class of cases, where that consideration would apply with more force than that relating to moneys levied on execution. This offer is not made in this case, and the objection on that ground is well sustained by the authorities cited for the defendant. This defect, considering the offer to pay the money into the bank, would be regarded as merely formal.

*Bill dismissed.*